UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES FIRE INSURANCE COMPANY,

    Plaintiff,

v.     Case No. 3:22-cv-470

CELTIC CONSTRUCTION SOLUTIONS, INC.,
INSPECTION DEPOT, INC., AMERIPRO INSPECTION
CORP., MICHAEL M. ROWAN, and LORRAINE R.
WALSH, individually, jointly and severally,

    Defendants.
_____/

## COMPLAINT

Plaintiff United States Fire Insurance Company ("USFIC") files its Complaint against Defendants Celtic Construction Solutions, Inc. ("Celtic"), Inspection Depot, Inc. ("IDI"), Ameripro Inspection Corp. ("Ameripro"), Michael M. Rowan ("Rowan"), and Lorrain R. Walsh ("Walsh"), and states:

## THE PARTIES

1.    This is an action for damages in excess of $75,000.00, exclusive of attorneys' fees, costs and prejudgment interest.

2.    United States Fire Insurance Company ("USFIC") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 305 Madison Avenue, Morristown, New Jersey.

3.    Celtic is a Florida corporation with its principal place of business located at 3131 St. John's Bluff Rd. S., Jacksonville, Duval County, Florida 32246.

4. IDI is a Florida corporation with its principal place of business located at 3131 St. John's Bluff Rd. S., Jacksonville, Duval County, Florida 32246.

5. Ameripro is a Florida corporation with its principal place of business located at 3131 St. John's Bluff Rd. S., Jacksonville, Duval County, Florida 32246.

6. Rowan is a citizen of the state of Florida residing at 7881 Little Fox Lane, Jacksonville, Duval County, Florida 32256.

7. Walsh is a citizen of the state of Florida residing at 7881 Little Fox Lane, Jacksonville, Duval County, Florida 32256.

8. The Court has jurisdiction over this matter pursuant to 28 USC §1332.

9. Venue is proper in the Middle District of Florida because defendants Celtic, IDI, and Ameripro's principal place of business is located in the Middle District of Florida and Rowan and Walsh are residents of Middle District of Florida.

10. All conditions precedent to bringing this action have occurred, or otherwise have been waived.

11. USFIC has retained the undersigned counsel and is entitled to recover its attorneys' fees and costs pursuant to contract.

## GENERAL ALLEGATIONS

I. **THE INDEMNITY AGREEMENT**

12. On or about February 8, 2019, Celtic, IDI, Ameripro, Rowan, and Walsh (collectively, the "Indemnitors") executed a General Indemnity Agreement (the "Indemnity Agreement") in favor of USFIC, as indemnitee. A copy of the Indemnity Agreement is attached as **Exhibit A**.

13. Pursuant to Paragraph 5 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to

> [E]xonerate, defend, indemnify and hold harmless [USFIC] from and against any and all Loss, irrespective of whether [USFIC] has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of [USFIC] upon any claim. [USFIC] shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments. An itemized, sworn statement of Loss by an employee of [USFIC], or any other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to [USFIC] interest on all disbursements made by [USFIC] at the maximum rate permitted by law, calculated from the date of each such disbursement. …

14. The term "Loss" is defined in Paragraph 2 of the Indemnity Agreement as:

> [a]ll demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses, court costs, technical, engineering, accounting, consultant, expert witness and/or other professional fees and expenses, including the cost of in-house professionals, which [USFIC] incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) [USFIC] having executed any Bond or any other instrument or any Modification thereof; (ii) any investigation by [USFIC] in connection with any Bond or Contract; iii) [USFIC's] prosecuting or defending any action in connection with any Bond; (iv) [USFIC's] obtaining or attempting to obtain the release of any Bond; (v) [USFIC's] recovering or attempting to recover property (as hereinafter defined) in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant or condition of this Agreement, (vii) [USFIC's] enforcing via litigation or otherwise any of the provisions of this Agreement; and, (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any Claim made against [USFIC] on any Bond and shall further include any premiums due on any Bond issued by [USFIC] on behalf of [Celtic].

15. The term "Claim" is defined in Paragraph 2 of the Indemnity Agreement as:

> any claim, notice of default, notice of termination, demand for payment, demand for meeting, action, proceeding, suit, judgment, or any form of notice, claim or demand received by [USFIC] in connection with any Bond or Contract.

16. Pursuant to Paragraph 7 of the Indemnity Agreement, the Indemnitors further agreed that:

> Immediately upon demand by [USFIC], the Indemnitors shall deposit with [USFIC] a sum of money, as collateral security, in an amount [USFIC], in its sole discretion, deems necessary at the time of said demand to protect [USFIC] from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against [USFIC], or (ii) [USFIC] determines that liability exists under the Bonds, or (iii) [USFIC] has a reasonable basis to believe that it may incur or sustain liability or Loss, or (iv) any diversion of funds relating to any contract by any Indemnitor in violation of this Agreement or applicable law, or (v) [USFIC] deems itself insecure, whether or not [USFIC] has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any Claim in whole or in part.

17. Paragraph 12 of the Indemnity Agreement provides that, until USFIC's liability is discharged:

> Indemnitors shall have a continuing obligation to provide current financial information to [USFIC] until such time as all obligations of the Indemnitors hereunder have been discharged. [USFIC], at any time, shall have continuous and uninterrupted access to the books, records, accounts and non-consumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by [USFIC] and the financial condition, credit worthiness and assets of any Indemnitor until the liability of [USFIC] under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of [USFIC].

## II.   THE PROJECT, THE BONDS, AND THE CLAIMS

18.    On or about January 14, 2019, Celtic entered into a Master Services Agreement (the "MSA"), Subcontract #19S23383AU25, with URS Group, Inc. ("URS") relating to URS's contract, Contract # N62470-13-D-6022, with the Commander NAVFAC Atlantic ("NAVFAC") to perform work at Navy Support Activity, Panama City, Florida ("Project"). A copy of the MSA is attached as **Exhibit B.**

19.    Pursuant to the MSA, URS issued Task Orders directing Celtic to perform various scopes of work on the Project.

20.    In or around December 2019, URS issued a Task Order, P.O. #M23383-07, to perform work on a project known as Building No. 652. A copy of the Task Order for Building No. 652 is attached as **Exhibit C.**

21.    In connection with Building No. 652, Celtic procured a performance and payment bond bearing number 602-107350 with a penal sum of $1,415,341.54 (the "Building No. 652 Bond"). Thereafter, Celtic procured two Consents of Surety to Change Order Increasing the penal sum for the Building No. 652 Bond to $1,607,546.17. A copy of the Building No. 652 Bond is attached as **Exhibit D.**

22.    In or around December 2019, URS issued Task Order, P.O. #M23383-08, to perform work on a project known as Building No. 5. A copy of the Task Order for Building No. 5 is attached as **Exhibit E.**

23.    In connection with Building No. 5, Celtic procured a performance and payment bond bearing number 602-107351 with a penal sum of $1,639,264.17 (the "Building 5 Bond"). Thereafter, Celtic procured three Consents of Surety to Change Order Increasing the penal sum

for the Building 5 Bond to $2,186,146.80. A copy of the Building No. 5 Bond is attached as **Exhibit F.**

24. On or about November 11, 2021, URS terminated Celtic from Building No. 652 (the "Building No. 652 Termination"). A copy of the Building No. 652 Termination is attached as **Exhibit G.**

25. On or about November 11, 2021, URS terminated Celtic from Building No. 5 (the Building No. 5 Termination"). A copy of the Building No. 5 Termination is attached as **Exhibit H.**

26. USFIC has received claims under the Building No. 652 Bond and the Building No. 5 Bond arising from the Building No. 652 Termination and the Building No. 5 Termination. Additionally, various subcontractors and suppliers to Celtic have made claims under the Building No. 652 Bond and the Building No. 5 Bond alleging Celtic failed and/or refused to make payment for certain labor, materials and/or services furnished in connection with the MSA and/or Building No. 652 and Building No. 5 (collectively, the "Bond Claims").

27. USFIC has incurred, and will continue to incur, losses, cost and/or expenses, in connection with the Building No. 652 Bond and the Building No. 5 Bond.

28. To date, Indemnitors, despite demand, have failed and/or refused to indemnify or otherwise reimburse USFIC for the losses, costs and/or expenses it has incurred in connection with the Building No. 652 Bond and the Building No. 5 Bond.

### III.   USFIC'S DEMAND UPON THE INDEMNITORS

29. By letter dated April 7, 2022 (the "April 7 Letter"), USFIC, among other things, advised Indemnitors that, under the Indemnity Agreement, there has been a "Default" (as that term

is defined by the Indemnity Agreement) under the Indemnity Agreement. A copy of the April 7 Letter is attached as **Exhibit I**.

30. By the April 7 Letter, USFIC, among other things, demanded that the Indemnitors, by no later than April 12, 2022, deposit with USFIC cash in the amount of $1,060,312.34, as collateral security in favor of USFIC (the "Collateral Demand") in connection with the Payment Bond Claims.

31. To date, the Indemnitors have failed and/or refused to comply with the Collateral Demand.

## COUNT I – SPECIFIC PERFORMANCE

32. USFIC re-alleges paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33. Under the terms of the Indemnity Agreement, the Indemnitors agreed to:

> [i]mmediately upon demand by [USFIC], … deposit with [USFIC] a sum of money, as collateral security, in an amount [USFIC], in its sole discretion, deems necessary at the time of said demand to protect [USFIC] from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against [USFIC]….

34. The Bond Claims constitute a Claim under the Indemnity Agreement.

35. USFIC, by the Collateral Demand, has demanded collateral from the Indemnitors in the amount of $1,060,312.34, in connection with Bond Claims.

36. Despite demand, the Indemnitors have failed and/or refused to deposit collateral with USFIC as security in favor of USFIC.

37. To date, the Indemnitors have failed and/or refused to comply with the Collateral Demand, thereby breaching the Indemnity Agreement.

38. USFIC is entitled to an order compelling Indemnitors to comply with their obligations pursuant to the Indemnity Agreement, including depositing collateral or other security in the sum of at least $1,060,312.34.

WHEREFORE, United States Fire Insurance Company requests this Court compel Celtic Construction Solutions, Inc., Inspection Depot, Inc., Ameripro Inspection Corp., Michael M. Rowan, and Lorrain R. Walsh, jointly and severally, to comply with their obligations pursuant to the Indemnity Agreement, including depositing with it collateral or other security in the sum of at least $1,060,312.34, for an award of attorneys' fees and costs and any other relief this court deems proper.

## COUNT II – CONTRACTUAL INDEMNITY

39. USFIC re-alleges paragraphs 1 through 31 of the Complaint as if fully set forth herein.

40. Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed to indemnify and save harmless USFIC from any and all "demands, liabilities, losses, costs, damages or expenses of whatever nature or kind, including all fees of attorneys and all other expenses."

41. USFIC has demanded the Indemnitors to honor their obligations under the Indemnity Agreement to, among other things, indemnify and hold USFIC harmless for any and all liability, loss, demand, fees and costs incurred and to be incurred.

42. Despite demand, the Indemnitors have failed and refused to honor their obligations under the Indemnity Agreement and have otherwise breached the Indemnity Agreement.

43. As a direct result of the Indemnitors' breach of the Indemnity Agreement, USFIC has sustained damages, costs and expenses, and will continue to sustain damages, costs and expenses.

44.     Based on the foregoing, the Indemnitors are liable to USFIC for the damages, costs, expenses and attorneys' fees it has sustained to date, and for any and all liability, losses, costs, expenses and attorneys' fees that may be incurred by USFIC in the future.

WHEREFORE, United States Fire Insurance Company demands judgment against Celtic Construction Solutions, Inc., Inspection Depot, Inc., Ameripro Inspection Corp., Michael M. Rowan, and Lorrain R. Walsh, jointly and severally, for damages, an award of attorneys' fees and costs and any other relief this court deems proper.

### COUNT III- COMMON LAW INDEMNITY

45.     USFIC re-allages paragraphs 1 through 11 and 18 through 28 herein.

46.     USFIC is completely and wholly without fault regarding the Bond Claims.

47.     USFIC's liability on the Building No. 652 Bond and the Building No. 5 Bond is solely vicarious, derivative or technical of the wrongdoing, actions or inaction of Indemnitors.

48.     USFIC has incurred losses, costs, damages, attorneys' fees and expenses.

49.     Celtic is liable to USFIC for the losses, costs, damages, attorneys' fees and expenses incurred by it.

50.     USFIC has retained the undersigned counsel to represent it in this action and has agreed to pay such counsel a reasonable fee. Such fees are recoverable pursuant to Florida law.

WHEREFORE, United States Fire Insurance Company demands judgment against Celtic Construction Solutions, Inc., for damages, an award of attorneys' fees and costs and any other relief this court deems proper.

DATED this 26th day of April 2022.

/s/ James S. Myers
James S. Myers
Florida Bar Number: 64246
jmyers@mdmc-law.com
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Fifth Third Center
201 East Kennedy Boulevard, Suite 815
Tampa, Florida 33602
Ph: 813-285-5520
Fax: 813-488-1183
*Attorneys for United States Fire Insurance Company*